1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIA G-S.,

                 Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

CASE NO. C24-5521-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

13

14

15

16

17

18

19

20

21

22

23

     Plaintiff appeals the ALJ's decision finding her not disabled. In 2021, Plaintiff applied for disability insurance benefits, beginning January 9, 2018, through her date last insured March 31, 2019. After conducting a hearing in June, 2023, the ALJ issued a decision finding (1) Hypogammaglobulinemia, CVID (common variable immunodeficiency), fibromyalgia, asthma, obesity, and depression are severe impairments; (3) Plaintiff has the residual functional capacity (RFC) to perform light work with additional limitations; and (4) Plaintiff cannot perform past relevant work but is not disabled because she can perform other jobs in the national economy.

     Plaintiff contends the ALJ misevaluated her testimony about the impact of CVID and CVID treatment, and erroneously rejected treating certified Physician Assistant (PA-C) Chris Adrig's opinion she needs to lie down each day and will miss work at least four days each month. Dkt. 7 at 1-3. The Commissioner disagrees and contends the ALJ properly found

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 1

1   Plaintiff's testimony is contradicted by the medical record and her activities, and PA-C Adrig's

2   opinion is not supported by the medical record or the opinions of any of Plaintiff's CVID

3   medical specialists. Dkt. 8. As discussed below, the Court finds the ALJ harmfully erred and

4   REVERSES the Commissioner's final decision and remands the case for further administrative

5   proceedings under 42 U.S.C. § 405(g).

6                                   **DISCUSSION**

7         *A.  Plaintiff's Testimony*

8         Plaintiff argues the ALJ erroneously rejected her testimony about the impact of CVID

9   and her CVID treatment infusions. She testified the side effects of her CVID subcutaneous

10  immunoglobulin infusions, which began on January 17, 2018, are more disabling than the side-

11  effects of the previous intravenous immunoglobulin infusions she received between 2011 to

12  2018. Dkt. 7 at 4 and Tr. 1344. Plaintiff does not challenge the ALJ's determination to discount

13  her testimony about her other impairments.

14        The ALJ found Plaintiff's CVID could reasonably cause her symptoms but rejected her

15  testimony as "not entirely consistent with the record." Tr. 27. As the ALJ did not find

16  malingering the ALJ was required to provide clear and convincing reasons to discount Plaintiff's

17  testimony. *Burrell v. Colvin*, 775 F.3d 1133, 113637 (9th Cir. 2014).

18        The ALJ noted before the date last insured, Plaintiff's CVID infusions caused significant

19  side effects. Tr. 26. The ALJ questioned Plaintiff why she became unable to work in January

20  2018 when she had been receiving infusions since 2013. Tr. 27. Plaintiff testified her dosage was

21  increased and when she changed medications in 2018, she ended up in the hospital, was without

22  care for six months and had to wait six months for a new allergist. *Id.* Plaintiff stated her

23  infusions, which she receives every three weeks, takes about four hours to administer, cause her

1  to be in bed for 12 to 14 hours a day during the days before an infusion, and cause fatigue that

2  makes the activities of daily living very difficult. Tr. 26-27.

3          The ALJ rejected Plaintiff's testimony regarding Hypogammaglobulinemia and CVID for

4  several specific reasons. Tr. 27-30. The ALJ noted Plaintiff has long struggled with CIVD, has

5  suffered infections and flu like symptoms, and has been treated with a variety of medications

6  which changed over time due to poor toleration (severe hives for example).[1] Tr. 26-27. The ALJ

7  found in January 2018, Plaintiff was treated with Hizentra which caused "hives all over" and sent

8  her to the emergency room. Tr. 28. However, since establishing care with allergy/immunology

9  specialist, Dr. Lahai Rampur, M.D., in May/June 2018, Plaintiff has been treated with Hyqvia

10 which she has "generally tolerated well." Tr. 28. The ALJ noted in March 2019 Dr. Rampur

11 reported Plaintiff had not had any severe infections, pneumonia, bronchitis, sinusitis in the last

12 six month. Tr. 29. On June 17, 2019, Plaintiff told "Dr. Rampur that fatigue affects her quality of

13 life for a week before and a few days after the infusion, otherwise tolerating the infusions well."

14 *Id.* In October 2019, Plaintiff's treatment notes indicated overall she was doing well, and "is

15 fully active, able to carry on all pre-disease" performance without restriction. *Id.*

16         In October 2020, treating doctor Anna Lang, M.D. reported Plaintiff was happy with her

17 Hyqvia dose, infuses over a 2.5 hour period, gets headaches managed by Tylenol and Benadryl,

18 and "gets a little tired/fatigued for a few days prior to her next dose but this very improved since

19 going up on her dose." *Id.* In January 2023, Dr. Lang's notes indicate Plaintiff was tolerating

20 Hyqvia well "without concern for adverse reactions" and Plaintiff "remains without shortness of

21 breath, cough, wheezing, or abdominal pain. Tr. 30.

22         The ALJ noted and discounted Plaintiff's testimony that her infusions caused her to feel

23

---

[1] *See* Tr. 28.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

1  "tired (fatigued) and to feel "poorly (malaise)." Tr. 30. The ALJ found while Plaintiff did not

2  tolerate Hizentra well, she tolerated Hyqvia well, implying her good tolerance of Hyqvia

3  contradicts her testimony of fatigue or malaise. *Id.* Substantial evidence does not support such a

4  finding. Dr. Lang's treating notes indicate Plaintiff's good tolerance of Hyqvia means the drug

5  does not cause Plaintiff to get hives (which sent her to the ER) or flu like symptoms. Dr. Lang

6  noted that both Hizentra and IVIG (Gammagard) were abandoned because they caused these

7  symptoms and were thus deemed to be poorly tolerated. *See* Tr. 1884-1885, Tr. 1594, 1604,

8  1617, 1685, 1703, 1707, 1757.

9      Further the record regarding the relevant period indicates Plaintiff told Dr. Rampur

10  fatigue affects her quality of life for a week before and a few days after the infusion, which

11  supports Plaintiff's testimony that her medications caused fatigue and malaise. Even after the

12  date last insured, Plaintiff reported to Dr. Lang in 2020 that while she was happy with her

13  adjusted Hyqvia dosage, she still felt a little tired and fatigued. The ALJ, in fact, noted Plaintiff

14  reported at times "fatigue and some side effects." Tr. 30. The record further indicates Plaintiff

15  consistently reported feeling tired to her doctors during the alleged period of disability, which

16  tends to support her testimony, not contradict it. Tr. 745, 907, 919, 945, 948, 951, 954, 957,

17  1169, 1181, 1606.

18      The Court accordingly finds the ALJ erred in finding Plaintiff's good tolerance of

19  Hyqvia, especially after the date last insured, is inconsistent with her testimony that the

20  medication causes fatigue and malaise during the relevant.

21      The ALJ also discounted Plaintiff's testimony finding her "treating allergy/immunology

22  providers have not assessed greater function by function limitations than the undersigned

23  assessed." Substantial evidence does not support this finding. The finding implies the

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 4

1  allergy/immunology providers rendered functional assessments that are inconsistent with

2  Plaintiff's testimony.[2] The ALJ, however, did not explain the basis of this finding, did not cite to

3  the record to support the determination, and did not point to anything showing Plaintiff's treating

4  sources assessed functional limitations inconsistent with Plaintiff's testimony. Contrary to the

5  ALJ's finding, Plaintiff's allergy/immunological specialists did not perform a functional

6  assessment of Plaintiff work related limitations. The Court accordingly finds the ALJ harmfully

7  erred in this regard.

8       Although the ALJ did not reject Plaintiff's testimony about the symptoms caused by her

9  CVID treatment based upon Plaintiff's "kickboxing" activities, the Commissioner argues

10 Plaintiff's "kickboxing" is a valid reason to discount her CVID testimony. Dkt. 8 at 4-5. The

11 ALJ clearly demarcated the evidence and reasons utilized in assessing Plaintiff's testimony about

12 her CVID symptoms. The ALJ considered kickboxing in assessing Plaintiff's testimony about

13 her fibromyalgia symptoms but did not consider kickboxing in discounting Plaintiff's testimony

14 about her CVID symptoms and treatment, and thus neither will the Court. *See Bray v. Comm'r of*

15 *Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision

16 "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations

17 that attempt to intuit what the adjudicator may have been thinking").

18      Even if the ALJ had considered Plaintiff's kickboxing as grounds to discount Plaintiff's

19 CVID treatment testimony, the record is inadequate to determine the frequency of kickboxing, or

20 whether Plaintiff kickboxed around the time of her infusions. Plaintiff's doctors' notes first

21

22

23

[2] PA-C Adrig provided the only medical opinion regarding Plaintiff's functioning, and opined Plaintiff would miss four or more days of work a month and needed to lay down each day. Tr. 1916.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

1    mention kickboxing in January 2019, tr. 956, and indicate Plaintiff's attempts to kickbox from

2    January 2019 forward worsened her fibromyalgia symptoms. However, there is no indication of

3    the frequency with which Plaintiff participated during the claimed disability period, or that

4    Plaintiff could kickbox with no negative consequences, or that she kickboxed around the time of

5    her CVID infusions. The medical record also indicated Plaintiff's fibromyalgia worsened with

6    kickboxing, but the record does not address CVID. Tr. 959. The record thus does not support the

7    Commissioner's implication Plaintiff's kickboxing contradict her CVID testimony. Dkt. 8 at 5.

8         In sum, the Court finds the ALJ erred in rejecting Plaintiff's testimony. The error is

9    harmful because the vocational expert testified having more than an average of one unscheduled

10   absence per month would preclude all full-time competitive work. Tr. 73

11        **B.    *PA-C John Adrig***

12        Plaintiff contends the ALJ erroneously rejected the medical opinion of her primary care

13   provider PA-C Adrig that Plaintiff needs to regularly lay down, cannot work around others, and

14   would miss work four days a month. The ALJ must explain the persuasiveness of medical

15   opinions using five factors, with supportability and consistency being the most important factors.

16   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). Additionally, the ALJ cannot reject

17   medical opinions as unsupported or inconsistent without providing an explanation supported by

18   substantial evidence. *Woods*, 32 F.4th 732, 792 (9th Cir. 2023).

19        The ALJ rejected PA-C Adrig's opinion Plaintiff needs to lie down about two hours

20   during the day and more on treatment days. Tr. 34 (referring to Tr. 1911, 1916). The ALJ

21   rejected the opinion on the grounds "there was little, if any, mention of the claimant laying down

22   during the day" in Plaintiff's treatment notes. Tr. 35. While the ALJ is correct the medical record

23   does not mention Plaintiff needing to lay down during the day, the record does not reflect

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 6

1   Plaintiff's doctors made any inquiry into whether she needed to lay down, or any finding she

2   does not lay down due to her CVID infusion treatment. It thus cannot be reasonably said the

3   medical record shows Plaintiff did not need to lay down each day, as the ALJ's finding implies.

4   Rather as discussed above, the medical record notes Plaintiff's fatigue and malaise just before

5   and after she receives her CVID infusions. This tends to support a finding that for the time-

6   period just before and after her infusions, Plaintiff does have a need to lay down during the day.

7   Nothing in the record contradicts this. The ALJ accordingly erred in rejecting PA-C Aldrig's

8   opinion Plaintiff needs to lay down during the day, at least to the extent this need arises every

9   month around the time of her CVID infusion treatments.

10          The ALJ rejected PA-C Aldrig's opinion she cannot work with the public or children due

11  to risk of infection finding none of Plaintiff's immunology specialists indicated she had this

12  limitation. The ALJ again is correct Plaintiff's specialists provided no opinions about her ability

13  to work the public or children. But this is because none of Plaintiff's specialists addressed

14  Plaintiff's functional limitations to perform work. The record thus cannot reasonably be

15  interpreted to establish Plaintiff's specialists believed or found she can work around the public

16  and children. Rather the record suggests Plaintiff's specialists would have concerns about such

17  work as they noted Plaintiff has a history of recurrent respiratory infections, needs continued

18  assessment, testing and regular injections of Hyqvia and additionally needs multiple vaccinations

19  each year "per immunocompromised schedule." Tr. 1893. The Court accordingly finds the ALJ's

20  determination is not supported by substantial evidence and the ALJ erred.

21          And lastly, the ALJ rejected PA-C Aldrig's opinion Plaintiff would miss work four days

22  a month due to fatigue, body pain, flu-like symptoms, and illness, on the grounds there was no

23  evidence supporting this assessment and because the PA-C failed to offer any rationale to

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 7

1    support his "conclusory finding." Tr. 35-36. The form PA-C Aldrig used to set forth his opinion

2    does not detail the basis of his opinions. However, the supportability of the PA-C's opinion is not

3    limited to the form used but necessarily includes the PA-C's treating records. The ALJ errs by

4    rejecting a medical source's opinion as lacking explanation without examining whether the

5    opinion reflects the source's treatment notes. *See Garrison v. Colvin*, 759 F.3d 995, 1013, 1014

6    n.17 (9th Cir. 2014). Additionally, Plaintiff correctly notes, PA-C Aldrig is Plaintiff's primary

7    care provider and received copies of treatment notes from many of Plaintiff's other providers and

8    was thus informed by the information Plaintiff's treatment team provided. *See*, *e.g.*, Tr. 1510,

9    1534, 1554, 1569, 1803, 1812, 1822.

10        As noted above, Plaintiff consistently complained of fatigue to her providers, including

11    PA-C Adrig, Tr. 1225, and indicated the Benadryl she took to prevent adverse allergic responses,

12    caused her to sleep for hours several days before and after her infusion day. Tr. 64, 1204; *see*

13    *also Benson v. Terhune*, 304 F.3d 874, 878 (9th Cir. 2002) ("Benadryl (sleep inducer)").

14    Plaintiff's infusion administration takes several hours, and Plaintiff testified she is unable to do

15    anything but sleep after the infusion is administered. Tr. 67. PA-C Adrig is included as a member

16    of the care team with access to Plaintiff's CVID treatment protocol. Tr. 1194. Accordingly, there

17    is a basis for PA-S Adrig's opinion that Plaintiff will miss work each month due to side-effects

18    arising from preparing for her CVID infusions, and side-effects following the infusion. The

19    Court accordingly finds substantial evidence does not support the ALJ's determination and that

20    the ALJ accordingly erred in discounting PA-C Adrig's opinions about Plaintiff's limitations.

21    The Court further finds that the ALJ harmfully erred as this error resulted in an RFC

22    determination that failed to include all assessed limitations.

23

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

The Court notes Plaintiff's functional limitations related to her CVID treatment are not static. The record indicates Plaintiff's functioning during the relevant period was lower than during the time frame outside of the relevant period. But even after the relevant period, Plaintiff still suffered from fatigue and malaise due to her CVID treatment, albeit at a lower level. Whether Plaintiff was disabled during the relevant period, and if so whether disability continues to this day must be addressed, and the Court accordingly finds further administrative proceedings are appropriate.

On remand, the ALJ shall reassess the Plaintiff's testimony about the impact of her CVID and CVID treatment, and the opinion of PA-C Adrig; develop the record and redetermine RFC as needed, and proceed to the remaining steps of the disability determination process as appropriate.

The Court finds Plaintiff is entitled to reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), upon proper request to this Court, because the Commissioner's position on this matter was not substantially justified.

DATED this 26th day of December, 2024.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

e

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9